1  ISMAIL J. RAMSEY (CABN 18982)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  MOLLY K. PRIEDEMAN (CABN 302096)
   ANDREW PAULSON (CABN 267095)
5  Assistant United States Attorneys

6       1301 Clay Street, Suite 340S
        Oakland, California 94612
7       Telephone: (510) 637-3680
        FAX: (510) 637-3724
8       molly.priedeman@usdoj.gov
        andrew.paulson@usdoj.gov
9

10 Attorneys for United States of America

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                   OAKLAND DIVISION

14 UNITED STATES OF AMERICA,           )  CASE NO. 4:23-CR-00213 HSG
                                        )
15        Plaintiff,                    )
                                        )
16   v.                                 )  NOTICE RE: PLEA AGREEMENT
                                        )
17 NAKIE NUNLEY,                        )
                                        )
18        Defendant.                    )
                                        )
19 _____     )

20        The United States hereby files the attached executed plea agreement, which it anticipates the

21 defendant will enter in a plea hearing to be set at a later date.

22

23 DATED: July 13, 2023                    ISMAIL J. RAMSEY
                                           United States Attorney
24

25                                         /s/ Andrew Paulson
                                           ANDREW PAULSON
26                                         MOLLY K. PRIEDEMAN
                                           Assistant United States Attorneys
27

28

ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MOLLY K. PRIEDEMAN (CABN 302096)
ANDREW PAULSON (CABN 267095)
Assistant United States Attorneys

      1301 Clay Street, Suite 340S
      Oakland, California 94612
      Telephone: (510) 637-3680
      FAX: (510) 637-3724
      andrew.paulson@usdoj.gov
      molly.priedeman@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. : |
| | ) |
|     Plaintiff, | ) |
| | ) PLEA AGREEMENT |
|   v. | ) |
| | ) |
| NAKIE NUNLEY, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

I, Nakie Nunley, and the United States Attorney's Office for the Northern District of California (hereafter "the government") enter into this written Plea Agreement (the "Agreement") pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure:

The Defendant's Promises

    1.    I agree to plead guilty to Counts One through Ten of the captioned Information, charging me with four counts of Sexual Abuse of a Ward, in violation of 18 U.S.C. § 2243(b); five counts of Abusive Sexual Contact, in violation of 18 U.S.C. § 2244(a)(4); and one count of False Statements to a Government Agency, in violation of 18 U.S.C. § 1001(a)(2). I agree that the elements of Sexual Abuse

PLEA AGREEMENT                  1                    v. 05/14/2020
:

of a Ward are as follows: (1) I knowingly engaged in a sexual act with the victim; (2) at the time, the victim was in official detention at FCI Dublin; and (3) at the time, the victim was under my custodial, supervisory, or disciplinary authority.

I agree that the maximum penalties for Sexual Abuse of a Ward are as follows:

|    |                                   |                                                          |
|----|-----------------------------------|----------------------------------------------------------|
| a. | Maximum prison term               | 15 years                                                 |
| b. | Maximum fine                      | $ 250,000                                                |
| c. | Restitution                       |                                                          |
| d. | Minimum supervised release term   | Five years                                               |
| e. | Maximum supervised release term   | Life                                                     |
| f. | Mandatory special assessment      | $100 per felony count plus $5,000 pursuant to 18 U.S.C. § 3014 |

I agree that the elements of Abusive Sexual Contact are as follows: (1) I knowingly engaged in a sexual contact with the victim; (2) at the time, the victim was in official detention at FCI Dublin; and (3) at the time, the victim was under my custodial, supervisory, or disciplinary authority.

I agree that the maximum penalties for Abusive Sexual Contact are as follows:

|    |                                   |                                                          |
|----|-----------------------------------|----------------------------------------------------------|
| a. | Maximum prison term               | 2 years                                                  |
| b. | Maximum fine                      | $ 250,000                                                |
| c. | Restitution                       |                                                          |
| d. | Minimum supervised release term   | Five years                                               |
| e. | Maximum supervised release term   | Life                                                     |
| f. | Mandatory special assessment      | $100 per felony count plus $5,000 pursuant to 18 U.S.C. § 3014 |

I agree that the elements of False Statements to a Government Agency are as follows: (1) I made a false statement; (2) the statement was made in a matter within the jurisdiction of the Department of Justice Office of Inspector General (DOJ OIG); (3) I acted willfully, that is, I acted deliberately and with knowledge both that the statement was untrue and that my conduct was unlawful; (4) the statement was material to the activities or decisions of the DOJ OIG, that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities; and (5) the statement involved offenses

under Chapter 109A of Title 18 of the United States Code.

I agree that the maximum penalties are as follows:

| | | |
|---|---|---|
| a. | Maximum prison term | 8 years |
| b. | Maximum fine | $ 250,000 |
| c. | Maximum supervised release term | 3 years |
| d. | Mandatory special assessment | $100 per felony count |

I understand that I am pleading guilty to multiple violations and that the Court may order that my sentence for each violation run consecutively.

2.     I agree that I am guilty of the offense to which I am pleading guilty, and I agree that the following facts are true:

During the time period from April 27, 2008, through March 26, 2022, I was employed as a correctional officer for the Bureau of Prisons (BOP), and was assigned to work at FCI Dublin, a federal prison that housed female inmates. UNICOR is the trade name for the federal prison industries, and UNICOR operated a branch at FCI Dublin. I served as a customer representative at UNICOR at FCI Dublin. In that role, I supervised inmates who worked on the call desks at UNICOR. As a correctional officer, I was also able to discipline inmates, including by writing incident reports; search inmates' cells; have their persons searched; monitor the inmates' phone calls, video chats, and emails; and restrain the inmates using physical force, among other things.

Y.Y. was an inmate housed at FCI Dublin who worked at the call center at UNICOR. In approximately March 2021, I began leaving Y.Y. notes of a sexual nature on her desk at UNICOR. On approximately April 20, 2021, I took Y.Y. into the staff bathroom at UNICOR. There, as alleged in Count One of the Information, I engaged in sexual acts (hereafter as defined by 18 U.S.C. § 2246(2)) with Y.Y.; specifically, I penetrated Y.Y.'s vulva with my penis and caused her mouth to contact my penis. After I engaged in sexual acts with Y.Y., I continued to write her notes of a sexual nature. On approximately June 10, 2021, after Y.Y. had quit her job at UNICOR, I visited her cell in her housing unit and made sexual remarks to her.

C.W. was an inmate housed at FCI Dublin who worked at the call center at UNICOR. In the spring of 2021, I began rubbing C.W.'s back and pulling her hair when I walked by her. I also made

sexual comments to her. In approximately May 2021, I called C.W. into my office, told her I could make her time easier or harder, and instructed her to turn around, pull down her pants, and bend over. C.W. complied and I masturbated while she did so. Approximately two weeks after that incident, as alleged in Count Two of the Information, on a date between approximately May 2021 and June 2021, I called C.W. into my office and engaged in a sexual act with her; specifically, I penetrated C.W.'s vaginal opening with my finger when I touched the inside of her vagina near her clitoris while I masturbated. In approximately June 2021, when C.W. approached me about my conduct towards Y.Y., I brought up the potential of transferring her to another facility, and threatened her that she could lose her job. As alleged in Count Three of the Information, on a date between approximately June 2021 and July 2021, I again engaged in a sexual act with C.W. in my office; specifically, I penetrated her genital opening with my finger when I touched C.W.'s clitoris while I masturbated. I also bit her neck. As alleged in Count Four of the Information, on a date in approximately July 2021, I also engaged in a sexual act with C.W. in my office; specifically, I penetrated her genital opening when I inserted two fingers inside her genital opening.

J.M. was an inmate housed at FCI Dublin who worked at the UNICOR call center. I made a number of sexual comments to J.M., and in particular would comment on her buttocks. I also asked her to pass notes to another inmate, T.A. Shortly before the COVID-19 pandemic began in March 2020, I approached J.M. in my office from behind and pressed my penis against her lower back through my pants. Several months later, as alleged in Count Five of the Information, on a date between approximately May 2020 and September 2020, when I was in the UNICOR warehouse with J.M., I engaged in sexual contact (hereafter as defined by 18 U.S.C. § 2246(3)) with her when I cupped her breast with my hand. When I cupped her breast, I did so with the intent to arouse or gratify my sexual desires, and with the intent to arouse or gratify J.M.'s sexual desires. While I did this, I referenced the fact that she was applying for compassionate release. I made this reference because I wanted her to understand that if she reported me, I could make it harder for her compassionate release motion to be granted. A few weeks later, as alleged in Count Six of the Information, on a date between approximately May 2020 and September 2020, I was alone with J.M. in my office when I engaged in sexual contact with her when I put my hand under her pants and touched her buttocks. When I touched

1   her buttocks, I did so with the intent to arouse or gratify my sexual desires, and with the intent to arouse
2   or gratify J.M.'s sexual desires.

3          T.H. was an inmate who was incarcerated at FCI Dublin and worked in the UNICOR call center.
4   When T.H. first started working in UNICOR, I would comment on her body, particularly her buttocks.  I
5   also would frequently massage her shoulders and grab her buttocks when she would walk by me.  On
6   one occasion, I wrote her a note asking her what she was going to give me for her birthday.  On a date
7   between approximately March 2020 and November 2021, T.H. had a verbal argument with another
8   inmate.  I called T.H. into a conference room and, as alleged in Count Seven of the Information, I
9   engaged in sexual contact with her when I touched her buttocks with my hand.  When I touched her
10  buttocks, I did so with the intent to arouse or gratify my sexual desires, and with the intent to arouse or
11  gratify T.H.'s sexual desires.  Specifically, I told her that if she wanted to keep her job, she needed to
12  pull her underwear down and bend over.  T.H. complied and I slapped her buttocks several times.  After
13  that incident, I touched T.H.'s buttocks multiple times when she walked past me and would massage her
14  shoulders on various occasions.

15         A.A. was an inmate who was incarcerated at FCI Dublin and worked in the UNICOR call center.
16  After A.A. began working at UNICOR, I began making sexual comments to her, specifically about her
17  buttocks.  I would also touch A.A.'s hair, shoulders, and lower back.  As alleged in Count Eight of the
18  Information, on a date in approximately August 2021, while A.A. was bending down to change the radio
19  station, I engaged in sexual contact with her when I grabbed her from behind and pressed my penis
20  against her buttocks.  When I touched her buttocks, I did so with the intent to arouse or gratify my
21  sexual desires, and with the intent to arouse or gratify A.A.'s sexual desires.  On another occasion, as
22  alleged in Count Nine of the Information, on a date between in or about August 2021 and in or about
23  November 2021 while A.A. was in my office, I engaged in sexual contact with her when I grabbed her
24  buttocks.  When I touched her buttocks, I did so with the intent to arouse or gratify my sexual desires,
25  and with the intent to arouse or gratify A.A.'s sexual desires.

26         K.S. was an inmate was who incarcerated at FCI Dublin and worked in the UNICOR call center.
27  I would play with K.S.'s hair, rub her shoulders, compliment her, and make sexual remarks to her.  On a
28  date between approximately August 2020 and September 2020, I made sexual remarks to K.S. and

grabbed her vagina over her clothes. A few weeks after those initial incidents, I put my fingers inside K.S.'s vagina. On another occasion, I told K.S. that I would not tell anyone about K.S. and her inmate girlfriend if I could watch them have sex. I then watched K.S. and another inmate kiss, and put K.S.'s hand on my penis over my clothes. On another occasion, I caused K.S. to touch my penis under my pants and ejaculated in her hand.

A.S. was an inmate who was incarcerated at FCI Dublin and worked in the UNICOR call center. I would touch A.S.'s hair, squeeze her shoulders, and comment on her body, particularly her buttocks. On one occasion, I called A.S. into my office, told her to pull down her pants and "show me." A.S. then pulled down her pants, revealing her vagina. I then lifted A.S.'s shirt, touched A.S.'s vagina, and caused A.S. to touch my penis and perform oral sex on me. A few months later, I called A.S. into my office again and put my fingers inside of her vagina. I also caused A.S. to touch my penis, and I masturbated. On another occasion, I called A.S. and her inmate girlfriend into my office and told them I would not report them for being in a relationship if they "showed me something." When I said that I meant that they needed to engage in sexual activity in front of me, or I would report the fact that they were in a romantic relationship, which was against BOP rules. A.S. and the other inmate then kissed while I masturbated and I touched A.S.'s buttocks.

On March 22, 2022, I voluntarily spoke with special agents with the Department of Justice Office of Inspector General (DOJ OIG). During that interview, I stated that I never exchanged sexual notes with Y.Y. and I had never engaged in sexual contact with any inmate. As alleged in Count Ten of the Information, those statements were false. In making these statements, I acted willfully; that is, I acted deliberately and with knowledge both that the statements were untrue and that my conduct was unlawful. My statements that I had never exchanged sexual notes with Y.Y. and had never engaged in sexual contact with inmates were made in a matter within the jurisdiction of the DOJ OIG. Moreover, the statement was material to the activities or decisions of the DOJ OIG; that is, the statement had a natural tendency to influence, or was capable of influencing the DOJ OIG's decisions or activities. Finally, the statement involved offenses under Chapter 109A of Title 18 of the United States Code.

3.     I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government

witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence.

4.      I agree to give up my right to appeal my convictions, including constitutional challenges to the statutes of conviction. I agree to give up my right to appeal the judgment and all orders of the Court. I also agree to give up my right to appeal any aspect of my sentence, including any orders relating to forfeiture and/or restitution, reserving only my right to claim that my sentence violated this plea agreement, applicable law, or the Constitution. I reserve my right to claim that my counsel was ineffective. I understand that this waiver includes, but is not limited to, any and all constitutional or legal challenges to my convictions and guilty pleas, including arguments that the statutes to which I am pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support my pleas of guilty.

5.      I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective.

6.      I agree not to ask the Court to withdraw my guilty pleas at any time after they are entered. In the event I violate any of the terms of the Agreement, I agree that the facts set forth in Paragraph 2 of this Agreement and, if applicable, the fact that I made a sworn admission to them in a previous court proceeding, shall be admissible against me in any subsequent proceeding, including at trial. In any subsequent proceeding conducted after I violate any of the terms of the Agreement, I expressly waive any and all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Paragraph 2 of the Agreement and, if applicable, the fact that I made a sworn admission to them at a previous court proceeding.

7.      I understand that the Court must consult the United States Sentencing Guidelines and take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). I also understand that the Court is not bound by the Guidelines calculations below; the Court may conclude that a higher Guidelines range applies to me, and, if it does, I will not be entitled, nor will I ask, to withdraw my guilty pleas. I further agree that regardless of the sentence that the Court imposes

PLEA AGREEMENT                                    7                                    v. 05/14/2020

on me, I will not be entitled, nor will I ask, to withdraw my guilty pleas. I agree that the Sentencing Guidelines offense level should be calculated as set forth below, and that I will not request a downward departure under the Sentencing Guidelines from that offense level although I reserve the right to seek a downward variance based on the factors set forth in 18 U.S.C. § 3553(a). I understand that the government is free to oppose any such request. The parties have reached no agreement regarding my Criminal History Category.

| | | |
|---|---|---|
| a. | Base Offense Level, Group 1 (Counts 1 and 10), U.S.S.G. § 2J1.2(b)(1): | 18 |
| b. | Base Offense Level, Group 2 (Count 2), U.S.S.G. § 2A3.3: | 14 |
| c. | Base Offense Level, Group 3 (Count 3), U.S.S.G. § 2A3.3: | 14 |
| d. | Base Offense Level, Group 4 (Count 4), U.S.S.G. § 2A3.3: | 14 |
| e. | Base Offense Level, Group 5 (Count 5), U.S.S.G. § 2A3.3: | 14 |
| f. | Base Offense Level, Group 6 (Count 6), U.S.S.G. § 2A3.3: | 14 |

g.   Multiple Count Adjustment, U.S.S.G. §§ 3D1.4(a), (b):
     Greater of Adjusted Offense Levels:                          18
     Increase in Offense Level:                                   +5
     Combined Adjusted Offense Level:                             23

h.   Acceptance of Responsibility:                                - 3
     If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a
     three-level reduction for acceptance of responsibility, provided that I
     forthrightly admit my guilt, cooperate with the Court and the Probation
     Office in any presentence investigation ordered by the Court, and continue
     to manifest an acceptance of responsibility through and including the time
     of sentencing.

i.   Adjusted Offense Level:                                      20

8.   I agree that regardless of any other provision of this Agreement, the government may and will provide the Court and the Probation Office with all information relevant to the charged offenses and the sentencing decision, including Victim Impact Statements. I agree that, based on the nature of the offenses, the Court should impose the following special condition of supervised release which is reasonably related to deterrence and rehabilitation:

<u>Special Condition (Searches)</u>

The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

9.   I agree that I will make a good-faith effort to pay any fine, forfeiture, or restitution I am ordered to pay. I agree to pay the special assessment at the time of sentencing.

I agree to pay full restitution for all losses caused by all the schemes or offenses with which I was charged in this case, and I understand that the amount of restitution will not be limited to the loss attributable to the count to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3). I understand that the Court will not consider my economic circumstances in determining the restitution amount. I agree to pay restitution in an amount to be set by the Court at the time of sentencing.

Any restitution payments shall be paid through the Office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

I understand that the restitution described above creates a lien in favor of the United States on all property and rights to property I may possess upon entry of judgment and continues for the later of 20 years from the entry of judgment or 20 years after release from imprisonment or until the debt is paid in full. I further understand the government will record a notice of the lien in any county where I reside or have property. I further understand that this order of restitution cannot be discharged in bankruptcy and that if I default on the payment of a fine or restitution, the Court may revoke probation or a term of supervised release, modify the terms or conditions of probation or supervised release, resentence me, hold me in contempt of court, order the sale of property, enter or adjust a payment schedule, or take any other action necessary to obtain compliance.

Within thirty days of the execution of this Plea Agreement, if asked by the Financial Litigation Unit ("FLU") of the United States Attorney's Office, I agree to complete, under penalty of perjury, a financial statement provided by the U.S. Attorney's Office and to update that statement with material changes within seven days of the change. I understand that I must identify all assets and financial interests valued at more than $1,000. I further understand that these assets and financial interests include all assets and financial interests in which I have an interest, direct or indirect, whether held in

1   my own name or in the name of another, in any property, real or personal.

2          I agree to surrender assets I obtained as a result of my crimes, and release funds and property

3   under my control in order to pay any fine, forfeiture, or restitution. I further agree to notify the FLU

4   before transferring any interest in property owned directly or indirectly by me, including any interest

5   held or owned under any other name or entity, including trusts, partnerships, and/or corporations. I also

6   agree to notify the FLU of any interest in property I may obtain, directly or indirectly, which is valued at

7   more than $1,000, and which includes any interest obtained under any other name, or entity, including a

8   trust, partnership, or corporation, after the execution of this Plea Agreement until the fine or restitution

9   is paid in full.

10          I agree that any fine, forfeiture, or restitution imposed by the Court against me will be due

11   immediately and subject to immediate enforcement by the government as authorized by 18 U.S.C.

12   § 3613. I further understand that the government may seek immediate collection of the entire fine,

13   forfeiture, or restitution from any assets without regard to any schedule of payments imposed by the

14   Court or established by the Probation Office and that monetary penalties imposed by the Court will be

15   submitted to the Treasury Offset Program so that any federal payment or transfer of returned property I

16   receive may be offset and applied to federal debts.

17          10.    I agree not to commit or attempt to commit any crimes before sentence is imposed or

18   before I surrender to serve my sentence. I also agree not to violate the terms of my pretrial release; not

19   to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the

20   government; and not to fail to comply with any of the other promises I have made in this Agreement. I

21   agree not to have any contact with any victims or witnesses in this case, either directly or indirectly,

22   before and after I am sentenced. This includes, but is not limited to, personal contact, telephone, mail,

23   or electronic mail contact, or any other written form of communication, and includes any harassing,

24   annoying, or intimidating conduct by me directed to any victims or witnesses. I agree that the Court

25   may also include this no-contact provision as a condition of my supervised release term. I agree that if I

26   fail to comply with any promises I have made in this Agreement, then the government will be released

27   from all of its promises in this Agreement, including those set forth in The Government's Promises

28   Section below, but I will not be released from my guilty pleas.

11.     Understanding that the government has in its possession digital devices and/or digital media belonging to and seized from me, I waive any right to the return of digital data contained on those digital devices and/or digital media and agree that if any of these digital devices and/or digital media are returned to me, the government may delete all digital data from those digital devices and/or digital media before they are returned to me.

12.     I agree that this Agreement contains all of the promises and agreements between the government and me, and I will not claim otherwise in the future.  No modification of this Agreement shall be effective unless it is in writing and signed by all parties.

13.     I agree that the Agreement binds the U.S. Attorney's Office for the Northern District of California only, and does not bind any other federal, state, or local agency.

The Government's Promises

14.     The government agrees not to file any additional charges against the defendant that could be filed as a result of the investigation that led to the captioned Information.

15.     The government agrees to recommend a sentence of no more than 72 months of imprisonment, unless the defendant violates the terms of the Agreement above or fails to accept responsibility.

The Defendant's Affirmations

16.     I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested.

17.     I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

//
//
//

PLEA AGREEMENT                                    11                              v. 05/14/2020
:

18.     I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defense, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

Dated:   7-10-23

NAKIE NUNLEY
Defendant

ISMAIL J. RAMSEY
United States Attorney

Dated: July 11, 2023

MOLLY K. PRIEDEMAN
ANDREW PAULSON
Assistant United States Attorneys

19.     I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement. In my opinion, my client understands all the terms of this Agreement and all the rights my client is giving up by pleading guilty, and, based on the information now known to me, my client's decision to plead guilty is knowing and voluntary.

Dated: July 10, 2023

TIM A. PORI
Attorney for Defendant